Case No. 12-4542

---

# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

---

RAYMOND L. DEMAIO,
*Plaintiff-Appellant*,

v.

RIGHT MANAGEMENT INC.
*Defendant-Appellee*.

---

## On Appeal from the United States District Court
## for the District of New Jersey

---

## BRIEF OF APPELLEE

---

Heather R. Boshak
FOX ROTHSCHILD LLP
Attorneys for Defendant
Right Management Inc.
75 Eisenhower Parkway, Suite 200
Roseland, New Jersey 07068
Telephone: (973) 992-4800
Facsimile:  (973) 992-9125

# TABLE OF CONTENTS

**Page**

COUNTER-STATEMENT OF the ISSUES PRESENTED FOR REVIEW ........... 1

COUNTER-STATEMENT OF THE CASE ............................................................ 2

COUNTER-STATEMENT OF FACTS .................................................................. 4

I.    THE PARTIES. ............................................................................................. 4

II.   RMI TERMINATED PLAINTIFF'S EMPLOYMENT BECAUSE
      HE FAILED TO MEET THE COMPANY'S EXPECTATIONS. ................ 5

      A.    Plaintiff Admits That In or About 2007, RMI Re-Emphasized
            its Strategic Focus in Talent Management. .......................................... 5

      B.    Plaintiff's Performance Reviews Reflected His Supervisor's
            Disappointment With His Efforts to Increase Talent
            Management In the Northeast Region. ................................................. 7

      C.    Based on Their Interactions With Plaintiff, RMI's Upper
            Management Concluded That Plaintiff Was Not Furthering The
            Company's Strategic Focus. .............................................................. 10

      D.    RMI's Upper Management Found Plaintiff's Performance To
            Be Deficient During Monthly Talent Management Telephone
            Calls. ................................................................................................. 13

      E.    RMI's Concerns Regarding Plaintiff's Failure to Focus His
            Attention On Talent Management Were Validated By the
            Northeast Region's Disappointing Sales Performance in Talent
            Management. ...................................................................................... 17

      F.    RMI Terminated Plaintiff's Employment Because He Failed to
            Embrace the Company's Strategic Focus. .......................................... 20

III.  PLAINTIFF HAS FAILED TO PROVIDE ANY EVIDENCE TO
      SHOW THAT rmi DISCRIMINATED AGAINST HIM BASED ON
      HIS AGE. ................................................................................................... 24

COUNTER-STATEMENT OF THE STANDARD OF REVIEW ........................ 26

SUMMARY OF ARGUMENT .......................................................................... 27

ARGUMENT ............................................................................................ 30

I.    PLAINTIFF HAS FAILED TO ESTABLISH THAT RMI'S
      LEGITIMATE BUSINESS REASONS FOR TERMINATING HIS
      EMPLOYMENT WAS A PRETEXT FOR AGE
      DISCRIMINATION. ........................................................................ 30

      A.    RMI Has Articulated A Legitimate Non-Discriminatory Reason
            For Terminating Plaintiff's Employment. ........................................ 32

      B.    The District Court Applied The Correct Standard In
            Determining That Plaintiff Could Not Establish Pretext. ................. 33

      C.    The District Court Correctly Determined That Plaintiff Failed
            to Prove  Pretext. ............................................................................ 36

            1.    *Plaintiff Has Failed to Provide Evidence of
                  Discriminatory Animus.* ............................................................ 38

            2.    *The Approval of the Termination Decision by An
                  Individual of the Same Age as Plaintiff Supports the Lack
                  of Pretext.* .................................................................................. 41

      D.    The District Court Correctly Found That Plaintiff Failed to
            Provide Evidence To Disprove RMI's Articulated Reason For
            The Termination of Plaintiff's Employment. .................................... 43

            1.    *Plaintiff Cannot Dispute With Any Credible Evidence
                  The Company's Strong Emphasis on Increasing Talent
                  Management Sales.* .................................................................... 44

                  a.    *Total Sales Numbers Do Not Accurately Reflect
                        Plaintiff's Performance.* ................................................ 44
                  b.    *Plaintiff Misstates Owen Sullivan's Deposition
                        Testimony.* ....................................................................... 46

            2.    *Plaintiff's Receipt of Salary Increases and Bonuses Does
                  Not Establish Pretext.* ............................................................... 48

            3.    *Plaintiff's Performance Reviews Evidence That RMI Was
                  Unhappy With His Efforts to Increase Talent
                  Management.* ............................................................................. 49

            4.    *RMI's Alleged Failure to Prepare A Document Stating
                  the Basis For Plaintiff's Termination is Not Evidence of
                  Pretext.* ...................................................................................... 54

5.    *Plaintiff Cannot Establish Pretext By Virtue of the Fact That He Met His Performance Goals for 2009.* ......................56

6.    *RMI's Upper Management Found Plaintiff's Performance on the Monthly Telephone Calls to Be Deficient.* ...............................................................................57

7.    *The Opinion of Plaintiff and His Subordinates Fails to Contradict RMI's Assessment That Plaintiff Did Not Embrace Talent Management.* .................................................59

CONCLUSION .................................................................................61

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

American Medical Imaging Corp. v. St. Paul Fire & Marine Ins. Co.,
    949 F.2d 690 (3d Cir. 1991) .............................................................. 26

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986) ................................................................... 27, 35

Billet v. CIGNA Corp.,
    940 F.2d 812 (3d Cir. 1991) ....................................................... 57, 60

Bohl v. Federal Express Corp.,
    2005 WL 1334627 (D.N.J. Jun. 3, 2005) ........................................ 38

Bowles v. City of Camden,
    993 F.Supp. 255 (D.N.J. 1998) ................................................... 52, 54

Catullo v. Libety Mutual Group, Inc.,
    2013 WL 142472 (C.A.3 (N.J.) Jan. 14, 2013) ......................... 31, 34

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986) .......................................................................... 26

Chou v. Rutgers,
    283 N.J. Super. 524 (App. Div. 1995).............................................. 60

Deville v. Givaudan Fragrances Corp.,
    419 Fed.Appx. 201 (3d Cir. 2011) .................................................... 34

Dungee v. Northeast Foods,
    940 F.Supp. 682 (D.N.J. 1996) ........................................................ 42

Fowle v. C & C Cola,
    868 F.2d 59 (3d Cir. 1989) ............................................................... 60

Fuentes v. Perskie,
    32 F.3d 759 (3d Cir. 1994) ......................................................36-37, 44

Grigoletti v. Ortho Pharm. Corp.,
    118 N.J. 89 (1990)....................................................................... 30, 31

Healy v. New York Life Ins. Co.,
    860 F.2d 1209 (3d Cir. 1988)..................................................................54

Holster v. McMaster-Carr Supply Co.,
    313 Fed.Appx. 486 (3d Cir. 2008) ...................................................34

Hood v. Pfizer, Inc.,
    322 Fed.Appx. 124 (3d Cir. 2009) ........................................53-54, 57

Hunter v. Rowan University,
    2007 WL 1038760 (D.N.J. Mar. 30, 2007) .....................................37

Hutchins v. United Parcel Service, Inc.,
    2005 WL 1793719 (D.N.J. Jul. 26, 2005) ........................................43

Johnson v. Public Services Enterprise Group,
    2012 WL 4846148 (D.N.J. Oct. 9, 2012)...................................35, 36

Kautz v. Met-Pro Corp.,
    412 F.3d 463 (3d Cir. 2005) ............................................................37

Keller v. Orix Credit Alliance, Inc.,
    130 F.3d 1101 (3d Cir. 1997)...........................................................37

Kremp v. Wachovia Bank, N.A.,
    2010 WL 4004481 (D.N.J. October 12, 2010) .................................39

Maiorino v. Schering-Plough Corp.,
    302 N.J. Super. 323 (App. Div. 1997), certif. denied, 152 N.J. 189 (1997)......43

Martinez v. National Broad. Co.,
    877 F.Supp. 219 (D.N.J. 1994) ........................................................31

McDonnell Douglas Corp. v. Green,
    411 U.S. 792 (1973) ........................................................................31

McGuigan v. Secretary of U.S. Department of Treasury,
    435 Fed.Appx. 78 (3d Cir. 2011) ....................................................34

Palatnik v. Home Depot, Inc.,
    2006 WL 680981 (D.N.J. Mar. 10, 2006) ........................................42

Reich v. Schering Plough Corp.,
    399 Fed.Appx. 762 (3d Cir. 2010) ................................................. 34

Schlichtig v. Inacom Corp.,
    271 F.Supp.2d 597 (D.N.J. 2003) ................................................. 52

Sempier v. Johnson & Higgins,
    45 F.3d 724 (3d Cir. 1995) ......................................................... 52

Sgro v. Bloomberg L.P.,
    2008 WL 918491 (D.N.J. Mar. 31, 2008) ...................................... 38

Sheridan v. E.I. DuPont de Nemours and Co.,
    100 F.3d 1061 (3d Cir. 1996) ...................................................... 27

Shields v. Zuccarini,
    254 F.3d 476 (3d Cir. 2001) ........................................................ 26

Slater v. Susquehanna County,
    465 Fed.Appx. 132 (3d Cir. 2012) ............................................... 34

Swarts v. Sherwin-Williams Co.,
    244 N.J. Super. 170 (App. Div. 1990) .......................................... 46

Swider v. Ha-Lo Industries, Inc.,
    134 F.Supp. 2d 607 (D.N.J. 2001) ............................................... 43

Tomasso v. Boeing Co.,
    445 F.3d 702 (3d Cir. 2006) ....................................................... 37

Williams v. Pemberton Twp. Public Schools,
    323 N.J. Super. 490 (App. Div. 1999) .......................................... 30

Young v. Hobart West Group,
    385 N.J. Super. 448 (App. Div. 2005) .......................................... 42

Zive v. Stanley Roberts, Inc.,
    182 N .J. 436, 447 (2005) ...................................................... 31, 32

**STATUTES**

N.J.S.A. 10:5-1, *et seq.* ................................................................. 1, 3, 30

**RULES**

Fed. R. Civ. P. Rule 56(c) ......................................................................... 26

## COUNTER-STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

Defendant-Appellee Right Management Inc. ("RMI" or the "Company") articulated a legitimate, non-discriminatory reason for terminating the employment of Plaintiff-Appellant Raymond DeMaio ("Plaintiff").  To establish a claim for age discrimination under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, *et seq*. ("NJLAD"), Plaintiff must show through competent record evidence that RMI's articulated reason for terminating Plaintiff's employment was a pretext for age discrimination.   Did the District Court properly determine that Plaintiff failed to make a showing through competent record evidence that RMI's reason for terminating Plaintiff's employment was a pretext for age discrimination?

## COUNTER-STATEMENT OF THE CASE

Plaintiff is a former employee of RMI, who worked as the General Manager of RMI's Northeast Region.  RMI provides talent management and career management services to companies.  RMI's talent management services consist of developing leaders and coaching employees within a company, and its career management business consists of outplacement services.  In 2007, RMI advised Plaintiff, as well as the Company's other General Managers, that going forward, the strategic focus of the Company was to develop the talent management side of the business.  Despite the specific direction of RMI, Plaintiff failed to convince the management team either of his commitment to developing the talent management line of business or his potential for success in this line of business.  Rather, as reflected in the Amended Complaint and Plaintiff's Appellate Brief, which are riddled with various facts and figures focused on Plaintiff's success on the career management side of the business, Plaintiff appeared content with maintaining the pre-existing career management business from institutional clients.  Due to the continued disappointment in Plaintiff's failure to embrace the Company's direction of developing the talent management business, effective May 15, 2010, RMI terminated Plaintiff's employment.

On July 8, 2010, Plaintiff filed a Complaint in the United States District Court, District of New Jersey, alleging that RMI terminated his employment

because of his age (58) in violation of the NJLAD.  On September 7, 2010, RMI

filed its Answer to the Complaint, denying Plaintiff's claims and raising all

appropriate defenses.  On March 13, 2012, Plaintiff filed an Amended Complaint,

and on March 27, 2012, RMI filed its Answer to the Amended Complaint.  On July

13, 2012, RMI filed a Motion for Summary Judgment, seeking the dismissal of the

Amended Complaint in its entirety.  By Order dated December 14, 2012, Hon.

Anne Thompson, U.S.D.J., granted RMI's Motion for Summary Judgment and

dismissed the matter.  On December 18, 2012, Plaintiff appealed the District

Court's Order granting RMI's Motion for Summary Judgment.

<u>COUNTER-STATEMENT OF FACTS</u>

## I.    <u>THE PARTIES.</u>

RMI is a talent and career management consulting company.  (97a, Young Dep. at 18:17-19).  RMI is wholly owned by ManpowerGroup, a global workforce solutions company.  (<u>Id</u>. at 17:25-18:12).  The services provided by RMI to its clients fall within two lines of business:  talent management and career management.  (<u>Id</u>.).  The talent management side of the business involves providing solutions for assessing the talent of current and potential employees, coaching employees, developing leaders, and coaching successor management.  (<u>Id</u>. at 19:6-8; 101a, Plaintiff Dep. at 65:14-16).  The career management side of the business consists of outplacement services for individuals who have left or are leaving their employment.  (97a, Young Dep. at 18:20-19:2; 101a, Plaintiff Dep. at 65:10-13).

RMI hired Plaintiff in March 2000 as Managing Principal for its northern New Jersey market.  (117a-119a).  In this capacity, Plaintiff was responsible for the overall profits and losses for most of RMI's offices in the State of New Jersey.  (101a, Plaintiff Dep. at 64:22-65:1).  More specifically, Plaintiff was responsible for selling career management and talent management services.  (<u>Id</u>. at 65:6-9).

In July 2006, Plaintiff was promoted to the position of General Manager for the Northeast Region.  (121a).  Plaintiff was fifty-five years old at the time of his

4

promotion.  (Id.).  As the General Manager for the Northeast Region, Plaintiff was

responsible for overseeing the New England, Connecticut, New York, and New

Jersey markets.  (131a, Matthews Dep. at 77:1-3; 778a).

The Northeast Region is part of the Americas Group, which, at all times

during Plaintiff's employment, was comprised of seven regions.  (778a).  Effective

the summer of 2007, Plaintiff was supervised by George Herrmann, then the

Executive Vice President of the Americas Group.  (102a, Plaintiff Dep. at 82:15-

83:9).  Plaintiff remained in the position of General Manager until May 2010,

when RMI terminated his employment.  (114a, Plaintiff Dep. at 245:7-9).

## II.    RMI TERMINATED PLAINTIFF'S EMPLOYMENT BECAUSE HE FAILED TO MEET THE COMPANY'S EXPECTATIONS.

### A.    Plaintiff Admits That In or About 2007, RMI Re-Emphasized its Strategic Focus in Talent Management.[1]

Plaintiff testified that starting in 2007, RMI began placing a greater

emphasis on talent management.  (100a, Plaintiff Dep. at 26:2-18).  During the

downturn in the economy in 2008 and 2009, RMI experienced significant growth

in its career management line of business due to the increased demand for

outplacement services.  (159a, Sullivan Dep. at 82:18-22).  In fact, in 2009, RMI

set record levels for career management services.  (153a, Sullivan Dep. at 34:15-

17).  However, as Owen Sullivan, the CEO of RMI, explained, "[c]areer

---

[1] OC, or organizational consulting, is the prior name for "talent management."
(488a, Plaintiff Dep. at 90:22-91:6).

management is a cyclical business and it's going to go away." (Id. at 34:24-35:2).
For this reason, RMI made focusing on the talent management business a priority.
(150a-151a, Sullivan Dep. at 25:16-26:2).

Additionally, since the Company's talent management sales were low
relative to career management sales, there was substantial room to grow this side
of the business. (Id. at 25:16-26:2; 155a, Sullivan Dep. at 43:15-21). Indeed,
Douglas Matthews, the former President and Chief Operating Officer of RMI,
testified that in 2007, approximately eighty five percent (85%) of the Company's
business consisted of career management services, while only fifteen percent
(15%) was talent management. (125a, Matthews Dep. at 22:9-18). Mr. Matthews
told Plaintiff, as well as the other General Managers, that the goal should be that
talent management represent fifty percent (50%) of the total business in each
region. (137a, Matthews Dep. at 136:23-137:5; 140a, Matthews Dep. at 164:2-15).
Mr. Sullivan explained that as part of this strategy, RMI sought to "create a
collaboration across the ManpowerGroup teams to get to know our clients, and
calibrate our understanding of relationships of contacts and then leverage that up."
(150a, Sullivan Dep. at 25:10-23; 152a, Sullivan Dep. at 33:6-16).

**B.    Plaintiff's Performance Reviews Reflected His Supervisor's Disappointment With His Efforts to Increase Talent Management In the Northeast Region.**

From the time of his promotion in 2006, RMI was concerned that Plaintiff did not embrace the strategic focus of the Company.  Mr. Sullivan testified that after interviewing Plaintiff for the General Manager position, he was apprehensive that "he [Plaintiff] wasn't all onboard with that strategy, that emphasis on talent management."  (149a, Sullivan Dep. at 19:18-20:4).  Mike Touhey, then the Executive Vice President of the Americas, supervised Plaintiff in the year following his promotion to General Manager of the Americas Group (102a, Plaintiff Dep. at 82:2-18).  During that time, Mr. Touhey advised Mr. Sullivan that Plaintiff was not sufficiently focusing his attention on talent management.  (156a, Sullivan Dep. at 46:24-47:10).

George Herrmann, the individual who replaced Mr. Touhey in the role of Executive Vice President of the Americas, also expressed this concern about Plaintiff.  Mr. Herrmann advised Plaintiff that the "Northeast Region was underperforming in talent management, and that Plaintiff did not demonstrate an understanding or appreciation of the future direction of the company in talent management."  (166a-167a, Interrogatory No. 4).  Mr. Herrmann's unhappiness with Plaintiff's efforts to increase talent management was reflected in Plaintiff's performance evaluations.

In Plaintiff's 2007 Annual Performance Appraisal, Mr. Herrmann stated that "I would encourage him [Plaintiff] to focus his energies on the OC [talent management] side of the business where there is significant opportunities for growth." (185a). Plaintiff admitted that based on his 2007 appraisal, he recognized that "the OC and the talent management side of the business was something that he [George Herrmann] wanted to see progressing." (103a, Plaintiff Dep. at 96:7-20).

In or about August 2008, Plaintiff received his 2008 mid-year review. (190a-196a). Plaintiff testified that he believed this review to be an "excellent overall review." (103a, Plaintiff Dep. at 97:14-18). However, in this review, Plaintiff received a 1 out of 5, which constitutes "Needs Improvement" under the Company's rating scale, in connection with reaching his billing goal for talent management. (191a). Specifically, Mr. Herrmann stated,

> Thru June, OC [ talent management] revenue was over $1.2 million less than in 2007. Ray was slow to react to the region's slow OC start and staffing and leadership issues which have dug a very big hole for the Northeast (and the Americas) for OC [talent management] this year. Current changes in place appear to be positive. I would encourage Ray to immediately create some top line momentum in Q3 and Q4, which should set up a strong year of OC [talent management] growth.

(Id.). Moreover, Plaintiff received a rating of "1," needs improvement, for overall profit margins. (Id.). This rating was based, largely, on the Northeast Region's talent management performance. Mr. Herrmann wrote, "[profit margins] offset by

8

low mix of OC [talent management] volume and significantly below target OC [talent management] gross margins." (191a). Overall, RMI rated Plaintiff's performance as a "2.25" out of "5" in areas relating to business generation and sales. (196a).

Plaintiff's 2008 year end performance evaluation further demonstrated RMI's unhappiness with Plaintiff's efforts to improve the Northeast Region's talent management business. While Mr. Herrmann praised Plaintiff on the business his region generated from career management services, he stated, "The significant miss on the OC [talent management] side was a big disappointment given the size of the markets and the impact it had on the overall Americas results." (204a). Mr. Herrmann further stated,

> Ray has a tendency to be parochial and transactional in his thinking round clients, especially as it relates to coordinating with other parts of the Manpower group. This was particularly noticeable on the Strategic Client Initiative…

(202a).

RMI did not issue Plaintiff a written warning for his poor work performance, or place him on a performance improvement plan as Plaintiff was too high level of an employee for such processes. (132a, Matthews Dep. at 81:8-15). Mr. Herrmann did not provide Plaintiff, nor any other General Managers in the Northeast Region, with a written performance evaluation in 2009. (778a).

**C.    Based on Their Interactions With Plaintiff, RMI's Upper
Management Concluded That Plaintiff Was Not Furthering The
Company's Strategic Focus.**

Douglas Matthews, then the President and COO for RMI, testified that

starting in 2008, he became concerned with Plaintiff's performance in connection

with the talent management business.  (126a, Matthews Dep. at 44:10-16).  Mr.

Matthews explained that in 2008, he accompanied a salesperson on Plaintiff's sales

team to a business meeting with a large client for RMI.  (Id. at 45:6-18).  Mr.

Matthews stated, "It was one of the most embarrassing calls that I've ever been on"

in that the sales person was unprepared and/or unable to discuss talent

management.  (Id. at 45:8-18.).

The second incident illustrating to Mr. Matthews that Plaintiff did not have a

"sense of urgency" in increasing talent management occurred in late 2009.  (127a,

Matthews Dep. at 50:7-15).  Jeff Joerres, the CEO of ManpowerGroup, wanted to

have a meeting in New York with the high level executives of various clients.  (Id.

at 50:12-18).  The purpose of the meeting was to share the talent management

strategy with the various business leaders and get their feedback.  (Id. at 50:19-25).

Mr. Matthews requested Plaintiff to set up such a meeting; Plaintiff responded that

he could not do so because he did not have the necessary contacts.  (Id. at 50:25-

51:19).  Mr. Matthews asked Plaintiff about one of RMI's largest accounts, and

Plaintiff said that he only had a low level contact.  (Id. at 51:21-52:1).  Mr.

Matthews subsequently spoke to the account manager at RMI responsible for that large account, who stated that Plaintiff had never met the account contact at that client. (Id. at 52:1-52:5). The meeting in New York was subsequently organized in January 2011 by Patricia Leonard, Plaintiff's successor. (Id. at 53:15-54:1).[2]

Finally, Mr. Matthews testified that the "performance of his [Plaintiff's] team" further led him to believe that Plaintiff was not focusing his attention on talent management. (128a, Matthews Dep. at 54:2-7). Under Plaintiff's leadership, talent management sales for the Northeast declined each year, decreasing by approximately $3,000,000 by 2009. (129a, Matthews Dep. at 59:16-60:1-6; 792a).

Owen Sullivan, the CEO of the Company, also testified that concerns about Plaintiff's performance in talent management had come to his attention. Mr. Sullivan testified that during his interactions with Plaintiff, he got the impression that Plaintiff was not putting enough emphasis on talent management. (151a, Sullivan Dep. at 27:24-29:20). Mr. Sullivan recited two specific incidents illustrative of the issue. (152a, Sullivan Dep. at 30:2-6). In the first incident, Mr. Sullivan accompanied a sales representative from the Northeast Region to a sales meeting with a large bank. (Id. at 31:3-5). During this meeting, Mr. Sullivan

---

[2] Plaintiff admits that he told Mr. Matthews that he did not want to set up the meeting at that time, but alleges that he preferred to "defer" it to the fall of 2010, nearly a year later. (339a, ¶ 4).

learned that the sales representative had not been briefed on the fact that the bank was one of the largest clients of Jefferson Wells, another one of ManpowerGroup's subsidiaries.  (Id. at 31:3-15).  Mr. Sullivan was concerned by this experience as it ran counter to the Company's strategy for increasing talent management business by leveraging and maximizing client relationships across the ManpowerGroup. (Id. at 33:6-11).  Mr. Sullivan testified that in the Northeast Region, "it was clear that that wasn't occurring."  (Id. at 31:16-20).

The second incident occurred in 2009 when Mr. Sullivan traveled throughout the world to speak to clients regarding the talent management services offered by RMI.  (153a, Sullivan Dep. at 35:8-12).  These presentations were put together by the General Managers and their teams in the given region.  (154a, Sullivan Dep. at 39:13-17).  Mr. Sullivan gave client presentations in Hong Kong, Mumbai, London, Amsterdam, and Pinehurst, among other cities, but the Northeast Region was unable to schedule a presentation in New York.  (153a, Sullivan Dep. at 35:8-17).  As Mr. Sullivan testified, "And my frustration on that was, obviously, pretty high."  (Id. at 35:17-18).  All of the major markets were able to schedule and put together these presentations -- except in the Northeast Region.  (154a, Sullivan Dep. at 41:2-3).

**D.    RMI's Upper Management Found Plaintiff's Performance To Be Deficient During Monthly Talent Management Telephone Calls.**

In January 2010, RMI held a "kickoff meeting" called "changing the game." (104a, Plaintiff Dep. at 127:1-3).  According to Plaintiff, the theme of this meeting was that "we had to make the transformation from a career management firm to a more broader -- a human capital firm including talent management."  (<u>Id</u>. at 127:4-8).

Also in January 2010, RMI began holding monthly telephone meetings with certain General Managers, including, Plaintiff whose performance in talent management needed attention.  Plaintiff participated in these monthly telephone calls with Owen Sullivan, Doug Matthews, Jeff Adix, then the Chief Financial Officer, and George Herrmann (105a, Plaintiff Dep. at 147:5-9).  "The meetings were intended to discuss talent management with those general managers that were struggling with performance." (157a, Sullivan Dep. at 52:16-18).  Plaintiff admitted that the Company required him to participate in these meetings to measure the progress that he was making in his talent management growth.  (105a, Plaintiff Dep. at 149:4-8).  Plaintiff testified that he was aware that at least two or three other General Managers in the Americas Group were also participating in monthly telephone calls with Messrs. Sullivan, Matthews, Adix and Herrmann. (<u>Id</u>. at 147:20-148:4).

13

To prepare for these monthly telephone calls, RMI instructed Plaintiff (and the other participating General Managers) to create metrics, or a business plan, that could be tracked and referred to during the phone calls. (138a, Matthews Dep. at 154:1-6). The guidelines for the business plan consisted of (1) training, (2) growing the talent management pipeline, (3) talent management call activity, and (4) talent management client development. (Id. at 156:6-22). Mr. Matthews testified that shortly after receiving Plaintiff's business plan for January 2010, he spoke with Mr. Herrmann, and discussed how disappointed he was with Plaintiff's plan. (138a-139a, Matthews Dep. at 157:10-158:18). In particular, Mr. Matthews explained that Plaintiff's listed goals, such as training RMI's consultants in understanding the talent management business, should have already been accomplished, and the goals for call activities seemed very low considering that the Northeast Region had nine consultants on staff. (139a, Matthews Dep. at 158:2-18; Boshak Cert. 207a-208a).

While Plaintiff testified that the "feedback was positive" during these telephone calls, Mr. Matthews and Mr. Sullivan viewed Plaintiff's performance on these calls very differently. Indeed, Mr. Matthews found these calls with Plaintiff to be "disastrous." (130a, Matthews Dep. at 72:23-73:7). During the January 2010 call, Mr. Matthews thought it was "clear" that Plaintiff was not familiar with the financial reports for the Northeast Region that had been prepared and distributed

14

prior to the call. (140a, Matthews Dep. at 165:20-22). Mr. Matthews also felt that Plaintiff was unable to answer questions regarding potential projects or sales in the Region's pipeline. (141a, Matthews Dep. at 166:10-14). Mr. Matthews testified that "It was very disappointing. Like I said, I lost confidence at that point that there was any commitment on the general manager's part of this business." (Id. at 169:2-5).

During the February call, the focus of the conversation was on Plaintiff's failure to meet his projected sales for the month of January. (142a, Matthews Dep. at 170:18-24). For January 2010, the actual revenue for talent management sales in the Northeast Region was $145,000, forty-five percent (45%) lower than Plaintiff's forecast for the month. (106a, Plaintiff Dep. at 157:16-18; 796a-809a). Plaintiff admitted that this deficit was a topic of conversation during his monthly telephone call for February. (107a, Plaintiff Dep. at 159:17-160:9).[3]

Plaintiff's continued failure to accurately forecast sales revenues for talent management was again addressed during the March 2010 telephone call. (142a-143a, Matthews Dep. at 173:19-174:6). For February 2010, the actual revenue for talent management sales in the Northeast Region was $125,000, thirty-five percent (35%) lower than Plaintiff's forecast for the month. (807a-809a; 108a, Plaintiff

---

[3] RMI tried to encourage Plaintiff during this period, including sending a form email in February 2010. Unfortunately, the results fell far short. (823a-824a; 146a, Matthews Dep. at 194:25-195:13-15).

Dep. at 164:19-22).  Plaintiff admitted that after this call, Mr. Herrmann called him

and said "he was disappointed the forecast was off."  (109a, Plaintiff Dep. at

167:2-9).  Plaintiff further admitted that his inability to accurately forecast monthly

revenue created a "legitimate business concern" for RMI.  (115a, Plaintiff Dep. at

258:3-7).

On March 15, 2010, just three days after the March 2010 telephone call,

Plaintiff submitted mid-month projections for March where his talent management

forecast for the Northeast Region dropped by nearly $80,000, or almost 25%.

(826a).  This significant reduction in the Northeast Region's projection for March,

without any explanation as to why his projection three days earlier had been so far

off, only further demonstrated Plaintiff's lack of understanding of the talent

management business.  (Id.).

Overall, Mr. Matthews found the monthly calls with Plaintiff to be

"disappointing" and even "disastrous."  (144a, Matthews Dep. at 189:2-9).  Mr.

Matthews further testified that in contrast to his monthly calls with Plaintiff, other

General Managers were "much more content oriented," and that the other General

Managers were "very knowledgeable of the clients and the talent management

business."  (Id. at 189:13-20).  Further, unlike Plaintiff, the other General

Managers were much better prepared for the monthly telephone calls, and provided

upper management with significantly more thorough and extensive business plans.

(144a-145a, Matthews Dep. at 189:21-190:8).

Mr. Sullivan shared the same frustrations regarding Plaintiff's performance

on the monthly conference calls. Mr. Sullivan testified that his impression of

Plaintiff during the monthly telephone calls was as follows:

> And, you know there was a general frustration that is Ray
> buying into the strategy? Is he or isn't he there? And there was
> the sense that he was feeling, hey, I just produced the biggest
> numbers on the career management side and that's good
> enough. And this talent management thing – Ahh.
>
> So I would say there was a general frustration with the
> commitment and the actions being taken. And as a result the
> lack of financial performance, especially as we measured
> financial performance against the opportunity of the
> marketplace.

(158a, Sullivan Dep. at 62:15-63:16).

**E.    RMI's Concerns Regarding Plaintiff's Failure to Focus His
Attention On Talent Management Were Validated By the
Northeast Region's Disappointing Sales Performance in Talent
Management.**

While the overall sales number for the Northeast Region was the highest

among the Americas Group for 2007-2009, these numbers do not tell the whole

story and do not reflect RMI's view of Plaintiff's performance as a General

Manager. As Mr. Sullivan testified during his deposition, the overall sales

numbers for the Northeast Region were a product of a "big market, and a lot of

career management." (159a, Sullivan Dep. at 82:4-10). Mr. Sullivan testified that

17

at the time Plaintiff was promoted to General Manager, the client base for the

Northeast Region "was the envy of everybody else in the company." (150a-151a,

Sullivan Dep. at 24:24-26:24). In reviewing Plaintiff's performance in developing

talent management, RMI took into consideration Plaintiff's success versus the

opportunities available in the Company's largest region, and Plaintiff's efforts to

build up the talent management business in the Northeast Region, a region that was

believed extremely fertile given its size, established career management client base

and the presence of so many large companies. (159a, Sullivan Dep. at 82:4-17).

In January 2010, the sales potential for talent management was "very strong"

in the Northeast Region. (140a, Matthews Dep. at 162:20-25). Notably, RMI's

biggest clients were in the Northeast and, to the disappointment of the Company,

those clients were not using the Company's talent management services in any

meaningful way. (Id. at 164:11-15).

Plaintiff admitted that Mr. Herrmann believed that there was potential in the

Northeast Region to significantly increase its talent management sales. (108a,

Plaintiff Dep. at 162:10-13). Plaintiff was well aware that Mr. Herrmann was

concerned that Plaintiff was not taking advantage of the talent management

opportunities in the Northeast Region. Indeed, Mr. Herrmann told Plaintiff that his

talent management sales were "small" compared to the opportunity in the

Northeast Region. (811a, 7m:47s-8m:12s). Additionally, Lynn Kinnealy, who

18

was the Regional Operations Manager for the Northeast Region at the time, and
was supervised by Plaintiff while he was the General Manager, testified that just a
few months before the termination of Plaintiff's employment, Plaintiff told her that
he was upset because Mr. Herrmann had told him that he did not think Plaintiff
was aligned with the Company. (213a-214a, Kinnealy Dep. at 53:17-54:4). Ms.
Kinnealy testified that Plaintiff explained that "they just don't feel I'm aligned
with the goals." (Id. at 52:24-55:1).

Despite the size and potential for growth in the Northeast Region, for 2007-
2009, the Northeast Region was one of the worst regions globally in terms of talent
management sales as a percentage of business. Indeed, although the Northeast
Region was by far the largest region in terms of overall sales and potential revenue,
its talent management sales were an extremely low portion of sales in comparison
to much smaller regions which did not have the same large career management
clients to use as a springboard for talent management sales. (786a-794a). From
2007-2009, where the Northeast Region had the highest overall sales of any region
in the Americas Group, it was either the lowest or second lowest region with
respect to talent management sales as a percentage of total sales. (830a).

Moreover, notwithstanding its position as the largest overall region, the
talent management sales for the Northeast Region in 2009 were only third out of
seven in actual revenue, falling behind much smaller regions. (107a, Plaintiff Dep.

at 161:6-13; 145a, Matthews Dep. at 192:14-193:1).  More striking, the Northeast

Region's disappointing talent management sales and inability to capitalize on the

potential of the Region were on the decline into 2010 as compared to other regions.

For the first quarter of 2010, the Northeast Region dropped to the sixth lowest out

of seven regions in the Americas Group for talent management.  (815a-821a; 145a,

Matthews Dep. at 192:14-193:1).  Furthermore, the Northeast Region was the

worst region – seven out of seven- in the Americas Group in terms of gross profit

for talent management for February 2010, the month preceding RMI's decision to

terminate Plaintiff's employment.  (823a-824a).  In fact, for the month of February

2010, the Northeast Region actually operated at a *loss* of $88,000 in talent

management.  (Id.; 146a, Matthews Dep. at 194:25-195:9).  No other region for

that month operated at a loss.  (822a-823a; 146a, Matthews Dep. at 195:13-15).

The members of the Northeast Region were well aware of the disappointing

talent management sales and comparative position in this area.  As testified by Ms.

Kinnealy, under Plaintiff's leadership, the Northeast Region was "behind" because

"our talent management numbers were lower than some of the other regions."

(212a, Kinnealy Dep. at 42:24-43:8).

### F.    RMI Terminated Plaintiff's Employment Because He Failed to Embrace the Company's Strategic Focus.

Mr. Matthews testified that the topic of terminating Plaintiff's employment

first arose in January 2010.  (133a, Matthews Dep. at 83:20-84:6).  Mr. Matthews

initially raised the possibility of terminating Plaintiff's employment because, as he

testified,

> We were all absolutely astonished at how much he didn't
> know about the business, how off his forecast were in
> talent management.  We were talking very small numbers
> and he was still off.  He had to get back to us with
> answers.  We were doing this with six or seven other
> GMs and they were all on top of it.  He was absolutely
> belligerent when you ask [sic] a question, and he did not
> have the information.  And his forecasts were willfully
> off from what the actuals came out to be month after
> month.  I lost confidence in January after his analysis of
> his talent management group.

(Id. at 84:25-85:13).  Mr. Matthews raised the issue with George Herrmann and

Owen Sullivan, but Mr. Herrmann wanted to give Plaintiff more time.  (134a,

Matthews Dep. at 86:9-18).

During the March 12, 2010 conference call, Plaintiff was, once again, unable

to provide basic information regarding the talent management business in the

Northeast Region.  (166a-167a, Interrogatory No. 4; 144a-145a, Matthews Dep. at

189:21-190:8l; 158a, Sullivan Dep. at 62:15-63:16).  In response to questions

during the call, Plaintiff again indicated that he would have to get back to senior

management as to basic information about the talent management business such as

what clients were being served, whether clients were being lost and why the

forecasts from the prior months were missed by so much.  (Id.).

On March 15, 2010, Plaintiff submitted the mid-month projections for talent management in March. (826a). As stated above, the projections were significantly lower than the projections Plaintiff had provided during his monthly call, only three days earlier. (Id.). Upon receipt of the projections, Mr. Matthews sent an email to Plaintiff, copying Mr. Herrmann, asking Plaintiff why his projection for March had been reduced since the phone call the previous week. (Id.). Mr. Herrmann responded to Mr. Matthews with an email stating, "Doug – Ray and I are having a tough day on this and are scheduled to speak shortly. This and several other issues have arisen since Friday that have gotten me to the end of my rope. I'll clue you in later." (Id.).

Mr. Matthews testified that later that day, he spoke with Mr. Herrmann, and the decision was made to move forward with the termination of Plaintiff's employment. (135a, Matthews Dep. at 91:15-20). Mr. Herrmann certified that he made the decision to terminate Plaintiff's employment because "he failed to embrace the strategic focus of the Company and did not successfully manage or develop the talent management side of the business, in direct contravention to the instructions of the Company." (169a-170a, Interrogatory No. 9). Mr. Matthews reiterated this sentiment in his deposition in which he testified that Plaintiff's employment was terminated because "he couldn't deliver the talent management strategy for the business." (135a, Matthews Dep. at 93:4-6).

Mr. Matthews approved the decision terminating Plaintiff's employment, and that night, March 15, 2010, sent Mr. Sullivan an email stating, "Owen – George has made the decision to replace Ray and I concur." (829a). Mr. Matthews is two months older than Plaintiff. (124a, Matthews Dep. at 8:3-5). Mr. Sullivan supported the decision to terminate Plaintiff's employment. (157a, Sullivan Dep. at 53:13-17).

On April 12, 2010, Mr. Herrmann called Plaintiff to inform him that RMI was terminating his employment. (109a, Plaintiff Dep. at 169:21-25). The following day, at Mr. Herrmann's request, Plaintiff met with Mr. Herrmann and William Kellner, Senior Vice President of Human Resources. (110a, Plaintiff Dep. at 171:10-24). Plaintiff testified that he does not have a specific recollection of what was discussed during this meeting -- only that Mr. Herrmann stated that he and Plaintiff "do not click" and that Plaintiff does "not have a passion for the talent management business." (546a, Plaintiff Dep. at 183:7-21).

Plaintiff further admitted that he surreptitiously wore a tape recorder specifically purchased for recording his conversation with Mr. Herrmann. (112a, Plaintiff Dep. at 179:5-15). The tape recording of this conversation reveals that, in addition to stating that he and Plaintiff "do not click" and that Plaintiff does "not have a passion for the talent management business," Mr. Herrmann stated that RMI terminated Plaintiff's employment because Plaintiff: (1) failed to follow the

Company's strategy; (2) did not have potential talent management sales in the pipeline; (3) failed to display the appropriate level of effort in pursuing talent management business with one of RMI's largest clients, an account with "enormous profits and enormous revenue;" (4) failed to closely manage the talent management business; and (5) failed to emphasize the importance of talent management to the sales force in the Northeast.  (811a,  3m:10s-11m:37s).

Plaintiff's last day of employment with RMI was May 15, 2010.  (114a, Plaintiff Dep. at 245:7-9).  Following a period of time when Plaintiff's responsibilities were handled by others in the Company, RMI hired Patricia Leonard, who was fifty-one years old at the time of her hire, to serve as General Manager for the Northeast Region.  (217a, Kellner Dep. at 88:20-22).  Mr. Herrmann made the decision to hire Ms. Leonard for the position of General Manager of the Northeast Region.  (Id. at 88:23-89:1).[4]

## III.    PLAINTIFF HAS FAILED TO PROVIDE ANY EVIDENCE TO SHOW THAT RMI DISCRIMINATED AGAINST HIM BASED ON HIS AGE.

Plaintiff argues in support of his age discrimination claim that his employment was wrongfully terminated because he "finished third out of seven regions in my talent management sales and percent of plan in 2009, I know for a

---

[4] Ms. Leonard is no longer employed by RMI.

fact [Dave M.][5] was below that, he was younger than I, he had the same emphasis put on talent management that we all had and he's working there and I no longer am." (113a, Plaintiff Dep. at 215:24-216:4). Plaintiff's reliance on such allegation demonstrates the lack of any merit to Plaintiff's claim as Dave M. separated from his employment with RMI, in large part, for "not doing enough to drive talent management." (160a, Sullivan Dep. at 98:18-99:4; 217a, Kellner Dep. at 135:23-136:22; 779a, ¶ 11). Dave M. is nineteen years younger than Plaintiff. (177a, Interrogatory No. 19). Moreover, Dave M. was hired by RMI as a General Manager on January 26, 2009, a little more than one year before RMI made the decision to terminate Plaintiff's employment, and only two years before Dave M.'s employment was separated. (779a, ¶ 11). In contrast, Plaintiff had been the General Manager of the Northeast Region for over three and a half years, and whose efforts in talent management had been addressed for at least three of those years, at the time RMI made the decision to terminate his employment. (183a-205a).

As for the other three regions that had lower talent management actual sales than the Northeast Region in 2009 – Canada, Southern, and Brazil – the General Manager for the Southern Region at that time, is only two years younger than Plaintiff and subsequently left the Company, and Canada and Brazil are significantly smaller regions as evidenced by their total sales. (792a; 136a,

---

[5] In view of the issues raised regarding this non-party, to protect his confidentiality, only the first initial of his last name is used.

Matthews Dep. at 131:14-25).  Moreover, in 2009, talent management sales made up a considerably larger percentage of total sales in Canada (10.6%) and Brazil (34.0%) than in the Northeast (5.9%).  (830a).  Further, as shown above, by 2010, the Northeast Region had declined comparatively.  (145a-146a, Matthews Dep. at 192:14-195:15; 818a-819a; 824a; 830a).

## COUNTER-STATEMENT OF THE STANDARD OF REVIEW

The review by the Third Circuit of the District Court's grant of summary judgment is *de novo*. American Medical Imaging Corp. v. St. Paul Fire & Marine Ins. Co., 949 F.2d 690, 692 (3d Cir. 1991).  Fed. R. Civ. P. Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law."  "[O]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually insupportable claims . . . ."  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  The moving party must show that the evidentiary material of record would be insufficient to permit the non-moving party to carry its burden of proof.  Id. at 318.  Once the moving party meets its initial burden, the burden then shifts to the non-movant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings.  Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001).

Courts consistently hold that summary judgment should be granted where, as here, there is no evidence to support the plaintiff's claims. "[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation[s] . . . of [his] pleading[s]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061 (3d Cir. 1996). Thus, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-2.

In this case, the District Court correctly held that Plaintiff failed to raise any genuine issues of material fact to defeat RMI's Motion for Summary Judgment.

## SUMMARY OF ARGUMENT

The crux of Plaintiff's appeal is based on the erroneous argument that the District Court applied the incorrect standard of review in analyzing his claim of age discrimination. Specifically, Plaintiff alleges that he was not required to "prove by a preponderance of the evidence" that RMI's reason for terminating his employment was pretext for age discrimination. (Appellant Brief, p. 35). Moreover, Plaintiff further incorrectly claims that the District Court improperly "weighed the evidence" in the record in assessing whether Plaintiff was able to meet his burden in proving pretext. (Appellant Brief, p. 43). As discussed more

fully below, Plaintiff's arguments must be rejected as they are directly contradicted by well-established Third Circuit precedent supporting the analysis conducted by the District Court.  Indeed, as shown by the evidence in the record, Plaintiff's one-count Amended Complaint was correctly dismissed with prejudice as Plaintiff failed to put forth any evidence to support a showing that his termination from employment was a result of age discrimination, nor did he put forth any evidence to counter RMI's legitimate, non-discriminatory reasons for the termination of his employment.

Instead, Plaintiff's Appellant Brief, much like his opposition to RMI's Motion for Summary Judgment and the Amended Complaint, rely solely upon the fact that he was the oldest General Manager in the Americas Group, and his unsupported and self-serving opinion that RMI "could not possibly" have terminated his employment for performance because he was an "outstanding" General Manager.  (Appellant Brief, p. 45).  These arguments cannot establish age discrimination.

In recognition of the inarguable lack of any discriminatory animus in the record, Plaintiff has attempted to challenge as pretextual RMI's basis for terminating his employment -- that RMI's upper management found that Plaintiff failed to demonstrate the necessary commitment, effort, understanding, and results in the talent management business as required by RMI.  Plaintiff has failed to

establish that such grounds are either inconsistent or implausible and merely a

cover-up for discrimination.  Instead, Plaintiff attempts to dispute RMI's evidence

regarding his performance issues and RMI's lack of satisfaction with Plaintiff in an

area of business recognized as the Company's strategic focus, through repeated

misstatements of the record evidence and with his own personal opinion.  Indeed,

Plaintiff's Appellant Brief is riddled with alleged facts that he knows to be contrary

to the record evidence.  For instance, Plaintiff alleges that:

- He received the maximum bonus for 2009 although it is undisputed that he did not receive the bonus attributable to talent management that year (Appellant Brief, p. 47; 850a);

- It is somehow "significant" that Plaintiff did not receive a written performance evaluation for 2009 when it is undisputed that Mr. Herrmann did not issue any General Manager with a written evaluation in 2009 (Appellant Brief, p. 53; 778a, ¶ 6);

- The Company's failure to place him on a performance plan evidences pretext when it is undisputed that such a tool would not be used for an employee at his level (Appellant Brief, p. 54; 132a, Matthews Dep. at 81:8-15; 598a, Kellner Dep. at 27:12-28:4);

- There is an "absence" of testimony from Mr. Herrmann regarding his dissatisfaction with Plaintiff's performance which is contradicted by Plaintiff's performance reviews, a certified statement by Mr. Herrmann, and a tape recorded conversation between Mr. Herrmann and Plaintiff (Appellant Brief, p. 61; 183a-205a; 169a-170a, Interrogatory No. 9; 811a, 3m:10s-11m:37s); and

- He was the only General Manager discharged for deficiencies in talent management when a General Manager, who is nineteen years younger than Plaintiff, separated from his employment with RMI for his

29

performance in talent management (Appellant Brief, p. 58; 160a, Sullivan Dep. at 98:18-99:4; 217a, Kellner Dep. at 135:23-136:22; 779a, ¶ 11).

These misstatements of the record are not evidence and cannot rebut RMI's legitimate reason for terminating Plaintiff's employment.

Rather, Plaintiff's Appellant Brief only illustrates what has been evident throughout this litigation – that Plaintiff's entire case is premised on his disagreement with the manner in which RMI evaluated his performance and his belief that he, not upper management, should establish the business practices of the Company. (Appellant Brief, pp. 56-57). As the District Court correctly held, this is insufficient to support an age discrimination claim.

Accordingly, RMI respectfully requests that the Judgment entered by the District Court granting summary judgment and dismissing Plaintiff's Amended Complaint with prejudice be affirmed.

## ARGUMENT

## I. PLAINTIFF HAS FAILED TO ESTABLISH THAT RMI'S LEGITIMATE BUSINESS REASONS FOR TERMINATING HIS EMPLOYMENT WAS A PRETEXT FOR AGE DISCRIMINATION.

The NJLAD utilizes the same analytical framework established by the federal courts for evaluating discrimination claims. Grigoletti v. Ortho Pharm. Corp., 118 N.J. 89, 96-97 (1990); Williams v. Pemberton Twp. Public Schools, 323 N.J. Super. 490, 497 (App. Div. 1999). Under this framework, the courts

apply the three-step burden-shifting analysis set forth in <u>McDonnell Douglas Corp.</u> <u>v. Green</u>, 411 U.S. 792, 802 (1973). <u>Grigoletti</u>, 118 N.J. at 97.

First, a plaintiff must come forward with sufficient evidence to establish a *prima facie* case of discrimination. <u>McDonnell Douglas</u>, 411 U.S. at 802. The New Jersey Supreme Court has stated that this burden in an age discrimination case is "rather modest." <u>Zive v. Stanley Roberts, Inc.</u>, 182 N .J. 436, 447 (2005). "If the plaintiff establishes a *prima facie* case, the burden shifts to the employer defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action." <u>Id</u>. The defendant need not prove that its proffered reason actually motivated the behavior, because throughout the burden shifting model, the burden of proving intentional discrimination remains with the plaintiff employee at all times. <u>Martinez v. National Broad. Co.</u>, 877 F.Supp. 219, 228 (D.N.J. 1994).

Once the employer sets out a legitimate, non-discriminatory reason for the adverse employment action, the plaintiff bears the burden to show that the defendant's proffered reason is merely a pretext for discrimination. <u>McDonnell Douglas</u>, 411 U.S. at 804. The plaintiff must "prove by a preponderance of the evidence that the legitimate nondiscriminatory reason articulated by the defendant was not the true reason for the employment decision but was merely a pretext for discrimination." <u>Catullo v. Libety Mutual Group, Inc.</u>, 2013 WL 142472, at * 2 (C.A.3 (N.J.) Jan. 14, 2013).

## A.    RMI Has Articulated A Legitimate Non-Discriminatory Reason For Terminating Plaintiff's Employment.

In view of the "rather modest" burden in making out an initial *prima facie* case of age discrimination in that a plaintiff does not need to establish an inference of discrimination, for the purposes of its motion for summary judgment, RMI does not contest this issue.  See Zive, 182 N.J. at 447  However, Plaintiff's claim must be dismissed as RMI has articulated a legitimate, non-discriminatory reason for terminating Plaintiff's employment, which cannot be rebutted by Plaintiff with any showing of pretext of discrimination.  As discussed more fully above, RMI terminated Plaintiff's employment because upper management found that he:  (1) failed to embrace the strategic focus of the Company; (2) failed to successfully manage and/or develop the talent management side of the business; (3) was unprepared for monthly phone calls with RMI's upper management; and (4) failed to show an understanding of the talent management business as evidenced by his inability to forecast talent management sales.  (140a-141a, Matthews Dep. at 165:20-166:14; 158a, Sullivan Dep. at 62:15-63:16; 166a-167a, Interrogatory No. 4; 185a; 190a-196a; 202a-204a; 803a-805a; 807a-809a; 811a).  Plaintiff even admitted that his inability to accurately forecast monthly revenue was a "legitimate business concern."  (115a, Plaintiff Dep. at 258:3-7).  As the District Court correctly noted, "DeMaio does not contest that the reason Right Management gives for the termination is legitimate and non-discriminatory."  (14a).

**B.    The District Court Applied The Correct Standard In Determining That Plaintiff Could Not Establish Pretext.**

In his Appellant Brief, Plaintiff challenges the District Court's finding that "DeMaio has failed to prove by a preponderance of the evidence that Right Management's reason for firing DeMaio was a pretext for discrimination, and Right Management is entitled to summary judgment." (Appellant Brief, p. 2; 19a). Plaintiff premises his appeal, in large part, on the argument that the District Court improperly held him to a "higher burden of proof" in granting RMI's motion for summary judgment. (Appellant Brief, p. 36). Specifically, Plaintiff claims that he was not required to "prove" pretext by a "preponderance of the evidence" in defense of RMI's motion. Instead, he claims that he only has to produce evidence from which a jury could determine that RMI's articulated legitimate business reason for terminating Plaintiff's employment is unworthy of credence without explaining why he asserts this to be a lower burden. (Appellant Brief, p. 37). Not only is Plaintiff incorrect as to the proper analysis required for discrimination claims, but he does not even satisfy the standard of proof as he attempts to frame it since he has not produced record evidence from which a jury could disbelieve RMI's articulated reason for terminating his employment. The standard stated by Plaintiff is no different than the analysis applied by the District Court: when viewed in the light most favorable to Plaintiff, he was unable to produce evidence

to support a showing of pretext, and as such, the case does not warrant submission to a jury.

First, contrary to Plaintiff's assertion, the proper standard of proof utilized by the Third Circuit in analyzing whether a plaintiff can establish pretext in the summary judgment context is whether a plaintiff can produce evidence that "***prove[s] by a preponderance of the evidence*** that the articulated reasons are a pretext for discrimination." Deville v. Givaudan Fragrances Corp., 419 Fed.Appx. 201, 207 (3d Cir. 2011) (citing Duffy v. Paper Magic Group, Inc., 265 F.3d 163 (3d Cir. 2001)) (emphasis added).  Indeed, the Third Circuit has repeatedly affirmed the dismissal of discrimination claims on summary judgment based upon the District Court's determination that the plaintiff could not "prove" pretext by a "preponderance of the evidence."  See Catullo, 2013 WL 142472, at *2; Slater v. Susquehanna County, 465 Fed.Appx. 132, 137 (3d Cir. 2012); McGuigan v. Secretary of U.S. Department of Treasury, 435 Fed.Appx. 78, 80-81 (3d Cir. 2011); Reich v. Schering Plough Corp., 399 Fed.Appx. 762, 764-65 (3d Cir. 2010); Holster v. McMaster-Carr Supply Co., 313 Fed.Appx. 486, 489-90 (3d Cir. 2008).

Second, Plaintiff also misconstrued the District Court's analysis of his pretext claim.  Plaintiff argues that the District Court improperly "selected a handful of DeMaio's arguments for pretext, weighed them against RMI's counterarguments, and concluded in each instance that RMI's position was more

persuasive." (Appellant Brief, p. 43). RMI disputes Plaintiff's characterization of the manner in which the District Court analyzed his pretext claim. Indeed, the District Court carefully considered every argument advanced by Plaintiff and found each lacking. Notably, Plaintiff makes the same exact arguments here on appeal -- all of which were thoroughly analyzed below. Contrary to Plaintiff's argument, it is the role of the District Court to assess the arguments and evidence in the record to determine whether the non-moving party could be able to prevail at trial. See Johnson v. Public Services Enterprise Group, 2012 WL 4846148, at * 5 (D.N.J. Oct. 9, 2012) (stating that on summary judgment, the court's function is to "determine whether there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party").

Moreover, Plaintiff repeatedly claims that the District Court improperly "weighed the evidence" in determining that he could not prove pretext, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) as support for this argument. (Appellant Brief, pp. 37, 43, 45). Anderson, however, does not stand for this proposition of law. Rather, in Anderson, the U.S. Supreme Court prohibited the District Court from weighing the evidence to resolve factual disputes, but charged the District Court with weighing the evidence to determine whether the non-moving party could make out his or her claim at trial. See Anderson, 477 U.S. at 242-43 (providing that "[A]t the summary judgment stage, the trial judge's

function is not himself to weigh the evidence and determine the truth of the matter but to ***determine whether there is a genuine issue for trial***") (emphasis added). See also Johnson, 2012 WL 4846148, at * 5.

Notably, Plaintiff does not allege that the District Court considered and reconciled material factual disputes between the parties, or that there are material disputes of fact which preclude the grant of summary judgment. Rather, Plaintiff's argument is premised on his misguided belief that at the summary judgment stage, the District Court can only consider Plaintiff's arguments, regardless of the evidence to the contrary in the record and the prevailing law. While Plaintiff seeks to marginalize the District Court's role in determining whether he has proven pretext, the applicable law establishes that the District Court acted properly by determining that Plaintiff failed to provide sufficient evidence to submit this case to a jury.

### C.    The District Court Correctly Determined That Plaintiff Failed to Prove Pretext.

To survive summary judgment, Plaintiff needed to produce record evidence to challenge RMI's articulated, legitimate business reason for the termination of his employment as but a pretext for discrimination– Plaintiff failed to do so. A plaintiff can establish pretext by presenting evidence that "casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a fact-finder could reasonably conclude that each reason was a fabrication." Fuentes v. Perskie,

32 F.3d 759, 762 (3d Cir. 1994).  A plaintiff can also present evidence that "allows the fact-finder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action."  Id.  The Third Circuit provides, however, that "pretext is not shown by evidence that 'the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent.'"  Kautz v. Met-Pro Corp., 412 F.3d 463, 467 (3d Cir. 2005) (quoting Fuentes, 32 F.3d at 765).  Instead, a plaintiff "must 'present evidence contradicting the core facts put forward by the employer as the legitimate reason for its decision.'"  Tomasso v. Boeing Co., 445 F.3d 702, 706 (3d Cir. 2006) (quoting Kautz, 412 F.3d at 467).

To succeed, Plaintiff must present evidence that suggests "not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1109 (3d Cir. 1997).  This prong is intentionally a "stringent standard" for plaintiffs because "federal courts are not arbitral boards ruling on the strength of [the employment decision]." Keller, 130 F.3d at 1108.  Indeed, "the question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination]." Id.; see also Hunter v. Rowan University, 2007 WL 1038760, at * 11 (D.N.J. Mar. 30, 2007) (dismissing

plaintiff's age discrimination claim where plaintiff could only "surmise" that she was treated differently because of her age); see also Sgro v. Bloomberg L.P., 2008 WL 918491, at * 7 (D.N.J. Mar. 31, 2008); Bohl v. Federal Express Corp., 2005 WL 1334627, at * 4 (D.N.J. Jun. 3, 2005).

Here, the District Court correctly found that Plaintiff failed to support a showing of pretext as there is no evidence of discriminatory animus, nor did Plaintiff provide any evidence that RMI's asserted reason for terminating his employment was false. (19a). Plaintiff, however, argues that the District Court's ruling was erroneous based upon the unsupportable assertions that: (1) there is allegedly "clear evidence of disparate treatment based on age"; and (2) the termination decision is "unworthy of credence" because Plaintiff's performance (in his opinion) was "outstanding." (Appellant Brief, pp. 45, 58). Plaintiff's arguments are contradicted by the evidence in the record and the prevailing law.

### 1. *Plaintiff Has Failed to Provide Evidence of Discriminatory Animus.*

Plaintiff's only articulated attempt to ascribe a discriminating animus to RMI's actions is his allegation that there is "clear evidence of disparate treatment" as Plaintiff was the oldest General Manager in the Americas Group, and by alleging, in an utter distortion of the record, that he was the only General Manager fired for his talent management results. (Appellant Brief, p. 58). In particular, Plaintiff argues that "all four of the General Managers who did worse in talent

management in 2009 were younger than DeMaio and none of them were fired."

(Id.).  This argument runs counter to the undisputed record evidence.

As the record indisputably reflects, RMI *did* terminate the employment of

one of the General Managers who had less talent management revenue than

Plaintiff in 2009.  Dave M., who is nineteen years younger than Plaintiff, separated

from his employment with RMI, after only approximately two years with the

Company in the General Manager role (notwithstanding that Plaintiff was given

three years to improve his performance), in large part, for "not doing enough to

drive talent management."   (160a, Sullivan Dep. at 98:18-99:4; 217a, Kellner Dep.

at 135:23-136:22; 779a, ¶ 11).[6]  Such undisputed evidence contradicts a finding of

pretext.  See Kremp v. Wachovia Bank, N.A., 2010 WL 4004481, at * 7 (D.N.J.

October 12, 2010) (holding that "no reasonable factfinder could find pretext"

---

[6] Plaintiff attempts to distinguish the termination of his employment from the
termination of Dave M.'s employment due to there being different decision-
makers.  Such an argument must be rejected.  To the contrary, the record reflects
that the emphasis in talent management came from the top of the company – and
continued after Plaintiff was let go as evidenced by the termination of Dave M.'s
employment due to concerns with his performance in talent management.  Plaintiff
also likes to "pick and choose" when the immediate supervisor should be given
more weight – arguing that the immediate supervisor should matter when alleging
that the termination of Dave M.'s employment does not undermine his disparate
treatment claim but that the immediate supervisor should not matter when it comes
to evaluating the performance of his successor, Patricia Leonard, who was
supervised by someone different, and who, in fact, has also separated from
employment with the Company.

where younger employees were terminated for the same, or similar, reasons as the plaintiff).

Moreover, Plaintiff cannot show that the Company's decision to terminate Dave M.'s employment in 2011, two years into his employment, rather than in 2010, when the Company's terminated Plaintiff's employment, somehow evidences disparate treatment. (779a, ¶ 11). In contrast, Plaintiff had been the General Manager of the Northeast Region for over three and a half years, and whose efforts in talent management had been addressed for at least three of those years, at the time RMI made the decision to terminate his employment. (183a-205a).

As for the other three regions that had lower talent management overall sales than the Northeast Region in 2009 – Canada, Southern, and Brazil – the General Manager for the Southern Region at that time, is only two years younger than Plaintiff and subsequently left the Company, and Canada and Brazil are significantly smaller regions as evidenced by their total sales. (792a; 136a, Matthews Dep. at 131:14-25). Moreover, in 2009, talent management sales made up a considerably larger percentage of total sales in Canada (10.6%) and Brazil (34.0%) than in the Northeast (5.9%). (830a). Further, as shown above, by 2010,

the Northeast Region had declined comparatively.[7]  (145a-146a, Matthews Dep. at 192:14-195:15; 818a-819a; 824a; 830a).

Plaintiff further argues that RMI's treatment of his successor, Patricia Leonard, who is eight years younger than he, and remained employed by RMI for a shorter period of time than Plaintiff, despite her alleged "awful" performance, evidences disparate treatment.  (Appellant Brief, p. 59).  Plaintiff's argument has no merit.   Plaintiff has no knowledge of Ms. Leonard's work performance in the two years she was the General Manager of the Northeast Region.  While the revenue in the Northeast Region may have declined in 2010 and 2011, Plaintiff cannot show that Ms. Leonard was responsible for this decline.  In fact, Ms. Leonard was hired in September 2010 - only three months before the close of the year.  (172a, Interrogatory No. 12).  Moreover, as Mr. Sullivan testified, RMI anticipated that due to the "cyclical" nature of the career management line of business, career management sales would decline following the record numbers in 2008-2009.  (153a, Sullivan Dep. at 34:24-35:2; 159a, Sullivan Dep. at 82:18-22).

### 2.    *The Approval of the Termination Decision by An Individual of the Same Age as Plaintiff Supports the Lack of Pretext.*

As stated above, the decision to terminate Plaintiff's employment was made by George Herrmann, then the Executive Vice President of the Americas Group.

---

[7] Plaintiff's own Appellant Brief evidences his decline in comparative performance.  (See Appellate Brief, pp. 10-11 – reflecting decline from 1 of 7 to 3 of 7 in Operating Profit from 2007 to 2009.

(133a, Matthews Dep. at 83:12-16). Moreover, the record is undisputed that Douglas Matthews, then the President and COO of RMI, had to and did approve the decision to terminate Plaintiff's employment. (Id. at 83:17-19). In fact, Mr. Matthews testified that he first brought up the idea of terminating Plaintiff's employment, but it was Mr. Herrmann who sought to give Plaintiff more time. (Id. at 84:25-85:13). The record is further undisputed that Mr. Matthews is two months older than Plaintiff. (124a, Matthews Dep. at 8:3-5).

The law is well settled that any attempt to infer discrimination is weakened by the fact that the decision maker is a member of the plaintiff's protected class. See Palatnik v. Home Depot, Inc., 2006 WL 680981, at * 9 (D.N.J. Mar. 10, 2006) (stating that the courts have been reluctant to infer discrimination where the decision-maker is in the same class as the plaintiff); Dungee v. Northeast Foods, 940 F.Supp. 682, 689 (D.N.J. 1996) (stating that the fact that the final decision maker is a member of plaintiff's protected class weakens any inference of discrimination).

The New Jersey courts have extended this principle to individuals who also approve the decision in question. See Young v. Hobart West Group, 385 N.J. Super. 448, 461 (App. Div. 2005) (finding no inference of discrimination where the individual who recommended and then approved the termination decision, although not the decision maker, was approximately two years younger than the

plaintiff); see also <u>Hutchins v. United Parcel Service, Inc.</u>, 2005 WL 1793719, at *

5 (D.N.J. Jul. 26, 2005) (rejecting plaintiff's pretext argument because the alleged

adverse action was reviewed and approved by an individual within the same

protected class).  Accordingly, Plaintiff cannot prove pretext as Mr. Matthews, the

individual who approved the decision to terminate his employment, is older than

Plaintiff.

> **D.   The District Court Correctly Found That Plaintiff Failed to Provide Evidence To Disprove RMI's Articulated Reason For The Termination of Plaintiff's Employment.**

Plaintiff cannot, as the District Court correctly held, identify any

contradiction in the facts relied upon by RMI in making the termination decision,

which is required when trying to establish pretext.  (16a-19a).  Rather, Plaintiff's

appeal is premised on a number of arguments as to why he believed he was an

"outstanding" general manager.  (Appellant Brief, p. 45).  Such an argument fails.

The proper inquiry is not whether RMI made the "right decision," or even a "bad

decision," but whether the decision was a pretext for intentional discrimination.

See <u>Maiorino v. Schering-Plough Corp.</u>, 302 N.J. Super. 323, 345 (App. Div.

1997), <u>certif. denied</u>, 152 N.J. 189 (1997); see also <u>Swider v. Ha-Lo Industries,

Inc.</u>, 134 F.Supp. 2d 607, 627 (D.N.J. 2001) (holding that it is insufficient for a

plaintiff to show that an employer's decision was wrong or mistaken, "since the

factual issue at dispute is whether discriminatory animus motivated the employer,

not whether the employer is wise"); <u>Fuentes</u>, 32 F.3d at 765 (holding that the plaintiff "cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent").

Moreover, as discussed more fully below, Plaintiff's alleged evidence of pretext is either: (1) contradicted by the record; or (2) based on nothing more than his own subjective opinion.

### 1. *Plaintiff Cannot Dispute With Any Credible Evidence The Company's Strong Emphasis on Increasing Talent Management Sales.*

#### a. *Total Sales Numbers Do Not Accurately Reflect Plaintiff's Performance*.

Plaintiff argues that RMI's reason for terminating his employment is "unworthy of credence" given his overall sales numbers for 2007-2009, which were the highest in the Americas Group. (Appellant Brief, p. 45). RMI does not dispute that the Northeast Region had the highest overall sales numbers in the Americas Group for 2007-2009. However, as Owen Sullivan, RMI's CEO, testified during his deposition, the overall sales numbers for the Northeast Region was a product of a "big market, and a lot of career management," not talent management. (133a, Matthews Dep. at 82:4-10). Accordingly, the total sales numbers for the Northeast Region do not provide any evidence that Plaintiff was meeting the Company's goal of increasing talent management sales.

Plaintiff's inability to improve talent management sales was of considerable concern to RMI's upper management as the undisputed evidence establishes that RMI's clearly expressed strategy was to increase the focus on the talent management side of the business. Indeed, the undisputed evidence in the record reveals that:

- Plaintiff testified that starting in 2007, RMI began placing a greater emphasis on talent management. (104a, Plaintiff Dep. at 126:2-18).

- Owen Sullivan explained, "[c]areer management is a cyclical business and it's going to go away," (153a, Sullivan Dep. at 34:24-35:2), and as such, RMI made focusing on the talent management business a priority. (150a-151a, Sullivan Dep. at 25:16-26:2).

- Mr. Matthews told Plaintiff, as well as the other General Managers, that their goal should be that talent management represent fifty percent (50%) of the total business in each region. (137a, Matthews Dep. at 136:23-137:5; 140a, Matthews Dep. at 164:2-15).

Moreover, RMI's focus was not solely on raw numbers. RMI terminated Plaintiff's employment because upper management found that Plaintiff failed to show the necessary commitment, effort, or understanding of the talent management business as required by the Company. (169a-180a, Interrogatory No. 9). Thus, the total sales for the Northeast Region was merely one consideration among many in assessing Plaintiff's performance as General Manager. Accordingly, Plaintiff's argument that it is implausible that RMI would terminate Plaintiff's employment due to his overall sales numbers runs counter to the undisputed evidence and merely reflects Plaintiff's unsubstantiated opinion that cannot support a finding of

pretext.  See Swarts v. Sherwin-Williams Co., 244 N.J. Super. 170, 178 (App. Div. 1990) (stating that a plaintiff must rely upon more than subjective belief to prove pretext and defeat summary judgment).

### b.    Plaintiff Misstates Owen Sullivan's Deposition Testimony.

Plaintiff further argues that the District Court improperly rejected Plaintiff's argument that an alleged statement by Mr. Sullivan, that "DeMaio's job performance was measured 'in its totality… [it] isn't just career management, it isn't just talent management, it's all of that" contradicted RMI's asserted basis for terminating Plaintiff's employment.  (Appellant Brief, p. 56).  Additionally, Plaintiff claims that in connection with Mr. Sullivan's alleged statement, "the District Court weighed the facts and accepted at face value and as dispositive RMI's assertion that DeMaio's performance in career management was not considered at all and that he was fired solely because of his performance in talent management."  (Appellant Brief, p. 57).  Plaintiff's assertion is a blatant misrepresentation of the District Court's opinion.  Indeed, the District Court correctly summarized the parties' positions and stated:

> The Court considers first DeMaio's contention that Right
> Management actually evaluated its general managers based on
> total performance rather than talent management performance
> alone.  To support this argument, DeMaio points to a statement
> made by CEO Owen Sullivan that job performance was
> measured 'in its totality…[it] isn't just career management, it
> isn't just talent management, its all of that.'

> The Court notes, however, that Right Management never asserts that general managers were evaluated based on talent management performance alone. Instead it argues that it considered talent management to be an important aspect of the business for the Company's long term sustainability.

(16a).

Moreover, contrary to the Plaintiff's argument, the District Court and this Court are not required to give credence to an argument based solely on an alleged statement taken out of context from a longer response, which directly contradicts Plaintiff's argument. Specifically, Mr. Sullivan's testimony is as follows:

> Q:    Is it your testimony that the billings and revenue numbers are unimportant in evaluating the performance of the general managers?

> A:    I would absolutely tell you the numbers are important, but numbers are about one data point. When I look at, and what I expect the executives to look at is the overall performance of the leadership of the company. Because it's both short term, immediate and long term. It's not just about what we deliver, but how we deliver it in a sustainable way. And that has been the emphasis since the day I took over the company.
>
> So to answer your question how about we measure your performance, how I look at performance, it's in its totality. And it certainly wasn't and isn't just career management, it isn't just talent management, it's all of that, and it's not only what, but how.

(655a, Sullivan Dep. at 89:4-19).

Accordingly, this Court should find, as did the District Court, that "when read in context, Sullivan's statement does not support DeMaio's proposition that

terminating DeMaio based on talent management performance was inconsistent

with the company's evaluation policy." (16a).

> **2.    *Plaintiff's Receipt of Salary Increases and Bonuses Does Not Establish Pretext.***

Plaintiff claims that RMI's issuance of alleged "performance-based financial

awards" to him could lead a jury to believe that RMI did not terminate Plaintiff's

employment due to concerns with his performance in talent management.

(Appellant Brief, p. 47). The District Court properly held that it was "not

persuaded that Right Management's decision to award salary increases, bonuses,

stock options, and awards to DeMaio is inconsistent with its decision to terminate

him for talent management deficiencies." (18a-19a). The District Court reasoned,

> This is particularly true in a case such as this where there is no
> evidence that the salary increases and stock options were
> granted for his performance in talent management, and the
> achievement awards DeMaio received were for categories
> unrelated to talent management. Furthermore, bonuses were
> tied to set metrics which resulted in DeMaio receiving no bonus
> for his performance in talent management.

(19a). The District Court's statement is supported by the evidence in the record.

(850a; 625a, Matthews Dep. at 102:1-11; 606a, Kellner Dep. at 104:7-105:6).

Indeed, contrary to Plaintiff's assertion, the undisputed evidence is that Plaintiff

did not receive the "full bonus potential" -- he received no bonus for talent

management sales in 2009. (850a; 625a, Matthews Dep. at 102:1-11). Moreover,

the bonuses awarded to Plaintiff were not "discretionary" but instead were tied to

set metrics associated with revenue for the entire Company, the Americas Group, and the Northeast Region.  (606a, Kellner Dep. at 104:7-105:6).  RMI does not dispute that the career management sales in the Northeast Region were high in 2009 as were career management sales throughout the Americas Group.  (862a-864a).

Finally, Plaintiff's argument runs contrary to his claim of age discrimination.  To the extent that RMI issued Plaintiff a discretionary bonus or salary increase, such a bonus or increase was approved by George Herrmann, the same individual who Plaintiff claims discriminated against him due to his age.  (625a, Matthews Dep. at 103:12-16).  Notably, Plaintiff was the same age when Mr. Herrmann approved Plaintiff's last increase as when Mr. Herrmann made the decision to terminate Plaintiff's employment.  (Id.).  How Plaintiff can claim that the first decision was not discriminatory but the second decision made just weeks later was, belies logic and illustrates that lack of credence of Plaintiff's claim.

### 3.    *Plaintiff's Performance Reviews Evidence That RMI Was Unhappy With His Efforts to Increase Talent Management.*

Plaintiff argues that RMI "fixated on isolated comments in DeMaio's 2007 and 2008 performance reviews which apparently misled the District Court into thinking that DeMaio received poor ratings."  (18a).  Not only is the argument insulting to the intelligence of the Court, it is also directly contradicted by the District Court's written decision.  Contrary to the Plaintiff's assertion, the District

Court did not state that it believed Plaintiff received "poor ratings." Rather, the District Court correctly noted what is reflected in the record - that Plaintiff's performance reviews for 2007 and 2008 evidence "Right Management's disappointment with his performance in talent management." (18a). The record is undisputed that Plaintiff's reviews contain numerous statements and low rankings that reflect RMI's concerns with Plaintiff's performance in talent management:

- In Plaintiff's 2007 Annual Performance Appraisal, Mr. Herrmann stated that "I would encourage him [Plaintiff] to focus his energies on the OC side [talent management] of the business where there is significant opportunities for growth." (185a).

- In Plaintiff's 2008 mid-year review, Plaintiff received a "1 out of 5, which constitutes "Needs Improvement" under the Company's rating scale, in connection with reaching his billing goal for talent management. (191a).

- RMI rated Plaintiff's performance as a "2.25" out of "5" in areas relating to business generation and sales in his 2008 mid-year review. (196a).

- In Plaintiff's 2008 year end performance review, Mr. Herrmann wrote, "The significant miss on the OC [also known as talent management] side was a big disappointment given the size of the markets and the impact it had on the overall Americas results." (204a).

These statements by Mr. Herrmann demonstrate that from 2007 and continuing, Mr. Herrmann was unhappy with Plaintiff's talent management performance.

Additionally, Plaintiff argues the District Court improperly disregarded two alleged "positive oral reviews" from Mr. Herrmann in September 2009 and January 2010. (Appellant Brief, p. 53). Plaintiff's claim of these alleged reviews

is suspicious considering that he alleges that from September 2009 through January 2010, Mr. Herrmann "had no first hand knowledge of anything DeMaio was doing in the Northeast." (Appellant Brief, pp. 63-64).  However, even accepting Plaintiff's allegation as true, such alleged "positive oral reviews" from Mr. Herrmann do not evidence pretext.  As the record establishes, RMI terminated Plaintiff's employment because RMI's upper management found that Plaintiff failed to demonstrate the necessary commitment, effort, understanding, and results in the talent management business as required by RMI.  (140a-141a, Matthews Dep. at 165:20-166:14; 158a, Sullivan Dep. at 62:15-63:16; 166a-167a, Interrogatory No. 4; 185a; 190a-196a; 202a-204a; 803a-805a; 807a-809a; 811a). The decision to terminate Plaintiff's employment came following Plaintiff's poor performance on the monthly talent management calls, his inability to correctly forecast talent management billings (something Plaintiff acknowledged was a legitimate concern for RMI), and the Northeast Region's decline in talent management sales for the first quarter of 2010, all of which occurred after the two alleged positive reviews.  (144a, Matthews Dep. at 189:2-9; 796a-809a; 815a-821a; 145a Matthews Dep. at 192:14-193:1).

Moreover, inexplicably, Plaintiff continues to argue that RMI's failure to provide him with a written performance evaluation in 2009 somehow creates an inference of discrimination.  (Appellant Brief, p. 53).  As William Kellner, RMI's

Director of Human Resources, certified, "Mr. Herrmann did not provide Plaintiff, nor any other General Manager in the Americas Group, with a written performance evaluation" in 2009. (778, ¶ 6). Thus, Mr. Herrmann did not single out Plaintiff based on his age as Plaintiff implies.

Plaintiff also disingenuously continues to argue that RMI never gave him a single written warning regarding his job performance or placed him on a performance improvement plan, and that this alleged failure to warn Plaintiff prior to the termination of his employment shows pretext. (Appellant Brief, p. 54). Plaintiff's arguments should be rejected. As the record establishes, while RMI uses written performance plans to address employee performance issues, it is undisputed that it does not do so for employees of Plaintiff's level. (132a, Matthews Dep. at 81:8-15). Indeed, as Mr. Kellner testified, these performance tools are only issued to lower level employees, not executives in leadership roles, such as General Managers. (598a, Kellner Dep. at 27:12-28:4).[8]

Furthermore, as discussed above, Plaintiff was put on notice in three consecutive evaluations between 2007 and 2008 that his performance on the talent

---

[8] Plaintiff cites Bowles v. City of Camden, 993 F.Supp. 255 (D.N.J. 1998); Schlichtig v. Inacom Corp., 271 F.Supp.2d 597 (D.N.J. 2003); and Sempier v. Johnson & Higgins, 45 F.3d 724 (3d Cir. 1995) in support of this argument. None of these cases stand for this proposition of law. Rather, these cases address alleged inconsistencies between the asserted basis for termination and the supporting evidence, circumstances not present here.

management side of the business was deficient. (183a-205a).[9] In addition,

Plaintiff was required to participate in monthly calls with upper management

because of his struggles in talent management. (157a, Sullivan Dep. at 52:16-18).

Plaintiff has admitted that his failure to accurately forecast talent management

sales was discussed during his monthly telephone calls with upper management,

and that after the monthly talent management call in March 2010, Mr. Herrmann

told Plaintiff that "he was disappointed the forecast was off." (105a, Plaintiff Dep.

at 147:5-9; 107a, Plaintiff Dep. at 159:17-160:9; 115a, 258:3-7). Plaintiff further

admitted that his inability to accurately forecast monthly revenue created a

"legitimate business concern" for RMI. (115a, Plaintiff Dep. at 258:3-7).

Notably, Plaintiff's inability to accurately forecast talent management sales negates

any argument that his "pipeline" in 2010 somehow evidences that his performance

as a General Manager was "outstanding" as he tries to assert. (Appellant Brief, pp.

25-26). Indeed, Plaintiff's performance history illustrates that his "pipeline" was

not indicative of actual sales. (183a-205a).

   In any event, even if RMI had failed to provide Plaintiff with notice of his

poor performance, this does not establish pretext of discrimination. See Hood v.

---

[9] Plaintiff selectively refers to Mr. Kellner's deposition testimony. Although
Plaintiff asserts that Mr. Kellner said there is no document stating that Plaintiff's
performance needed to improve (Appellant Brief, p. 17), Mr. Kellner testified to
the contrary citing Plaintiff's performance evaluations. (719, Kellner Dep. at
179:17-21).

Pfizer, Inc., 322 Fed.Appx. 124, 129 (3d Cir. 2009) (holding that failure to warn the plaintiff of his poor performance cannot defeat summary judgment, because the employer "had no duty to warn in the first place"); see also Healy v. New York Life Ins. Co., 860 F.2d 1209, 1216 (3d Cir. 1988) (stating that "Although we can sympathize with Healy's situation and observe that employees will perform better if they receive feedback, we note that from a legal perspective managers are not compelled to convey their dissatisfaction to employees").

> **4.     *RMI's Alleged Failure to Prepare A Document Stating the Basis For Plaintiff's Termination is Not Evidence of Pretext.***

Plaintiff argues that a jury may somehow infer pretext based on the absence of any document showing that Plaintiff was fired due to his poor performance in talent management.  (Appellant Brief, p. 56).  Plaintiff, however, fails to put forth any basis in law or fact as to why this is of any importance to his claim of age discrimination.  Rather, Plaintiff has cited the case of Bowles v. City of Camden, 993 F.Supp. 255, 264 (D.N.J. 1998), which addresses alleged inconsistencies between the asserted basis for termination and the supporting evidence, which as shown, does not exist in the record before the Court.

Moreover, where Plaintiff tries to assert that there is no contemporaneous record of RMI's reasons for terminating his employment (Appellant Brief, p. 55), the record reflects the contrary.  In addition to the performance evaluations, financial records, Plaintiff's participation in monthly telephone calls and Mr.

Matthews' March 2010 email, the contemporaneous recording of the termination

meeting on April 12, 2010 produced by Plaintiff shows that RMI terminated

Plaintiff's employment due to his disappointing performance in talent

management.  (811a; 815a-821a; 822a-824a; 811a, 3m:10s-11m:37s).  Indeed, the

tape recording of the conversation between Plaintiff and Mr. Herrmann reveals just

that - as Mr. Herrmann stated that RMI terminated Plaintiff's employment because

Plaintiff:  (1) failed to follow the Company's strategy; (2) did not have potential

talent management sales in the pipeline; (3) failed to display the appropriate level

of effort in pursuing talent management business with one of RMI's largest clients,

an account with "enormous profits and enormous revenue;" (4) failed to closely

manage the talent management business; and (5) failed to emphasize the

importance of talent management to the sales force in the Northeast.  (811a,

3m:10s-11m:37s).

Further, Plaintiff argues that RMI's intention to announce Plaintiff's

"departure as a resignation" somehow evidenced pretext.  (Appellant Brief, p. 55).

While RMI initially offered Plaintiff the opportunity to resign, and prepared an

initial draft of the announcement to that effect in advance of the termination

meeting with Plaintiff, the announcement distributed merely reflected Plaintiff's

departure.  (866a-867a).  RMI's actions are completely reasonable, and in no way

evidence any sort of inappropriate conduct.  The District Court also properly

rejected Plaintiff's inane argument that the change of status form on RMI's

computer system supports pretext. (19a).

> **5.** ***Plaintiff Cannot Establish Pretext By Virtue of the Fact That***
> ***He Met His Performance Goals for 2009.***

Plaintiff argues that the Company's basis for terminating his employment is

discredited by the fact that he met his performance goals in talent management for

2009. (Appellant Brief, pp. 59-60). This argument also is lacking in merit. As

discussed above, RMI did not terminate Plaintiff's employment based on numbers

alone. Rather, RMI's upper management found that Plaintiff failed to demonstrate

the necessary commitment, effort, understanding, and results in the talent

management business as required by RMI. (140a-141a, Matthews Dep. at 165:20-

166:14; 158a, Sullivan Dep. at 62:15-63:16; 166a-167a, Interrogatory No. 4; 185a;

190a-196a; 202a-204a; 803a-805a; 807a-809a; 811a).

Moreover, the undisputed evidence reflects that Plaintiff's performance

goals were very low considering the size of the Northeast Region. Indeed, due to a

lack of achievement by Plaintiff in the development of the talent management

business, Mr. Herrmann found it necessary to instruct, supervise and coach

Plaintiff in running the talent management business and to provide Plaintiff with

only very modest goals. (85a, ¶ 49). Plaintiff's listed goals, such as training

RMI's consultants in understanding the talent management business, should have

already been accomplished, and the goals for call activities seemed very low

considering that the Northeast Region had numerous talent management

consultants on staff.  (139a, Matthews Dep. at 158:2-18; 207a-208a).  Additionally,

the Northeast Region fell behind much smaller regions in actual revenue despite

being the largest region and having the greatest potential for growth.  (107a,

Plaintiff Dep. at 161:6-13; 145a, Matthews Dep. at 192:14-193:1).

## 6.    *RMI's Upper Management Found Plaintiff's Performance on the Monthly Telephone Calls to Be Deficient.*

Plaintiff alleges that the "District Court improperly accepted as true RMI's

disputed version of the monthly phone calls DeMaio had with senior management

in January, February, and March 2010 to discuss talent management."  (Appellant

Brief, p. 60).  There is no "dispute" regarding these monthly calls.  Both Mr.

Matthews and Mr. Sullivan, who participated in the monthly calls with Plaintiff,

testified that they found Plaintiff's performance on these calls to be deficient.

(130a, Matthews Dep. at 72:23-73:7; 158a, Sullivan Dep. at 62:15-63:16).

Plaintiff's view that these calls were "positive," has no bearing on how Plaintiff's

performance was perceived by RMI's upper management.  See Billet v. CIGNA

Corp., 940 F.2d 812, 825–27 (3d Cir. 1991); see also Hood, 322 Fed.Appx. at 128.

Moreover, Plaintiff's argument that there is no written evidence that upper

management had concerns with Plaintiff's performance during the monthly

telephone calls is both legally insufficient and factually unsupported.  (Appellant

Brief, p. 60).  First, Plaintiff fails to put forth any legal basis as to why an alleged

lack of written documents somehow demonstrates pretext  This is especially so in view of Plaintiff's admission that he was verbally told of the Company's disappointment with his failure to accurately forecast monthly revenue, and Plaintiff's concession that this created a "legitimate business concern" for RMI. (107a, Plaintiff Dep. at 159:17-160:9; 109a, Plaintiff Dep. at 167:2-9; 115a, Plaintiff Dep. at 258:3-7).

Second, on the afternoon of March 15, 2010, prior to Mr. Herrmann's decision to terminate Plaintiff's employment, Mr. Matthews sent Plaintiff an email chastising him for reducing his March talent management projection by over $80,000 since the call just days before.  (826a).

Finally, Plaintiff claims that there is an "absence of any testimony" from Mr. Herrmann that he was dissatisfied with Plaintiff's results in talent management. (Appellant Brief, p. 61-62).  While Mr. Herrmann was not deposed in this matter due to his declining health and subsequent death, his position is reflected in the record, including the previously cited performance reviews and financial records.[10] Additionally, in RMI's answer to Interrogatories, Mr. Herrmann certified that he made the decision to terminate Plaintiff's employment because "he failed to embrace the strategic focus of the Company and did not successfully manage or

---

[10] Dates were provided for Mr. Herrmann's deposition on no less than three occasions.  Plaintiff however chose not to proceed on those dates.  Moreover, Plaintiff's counsel was advised of Mr. Herrmann's health status when it became known to counsel.

develop the talent management side of the business, in direct contravention to the instructions of the Company." (169a-170a, Interrogatory No. 9).

Moreover, Plaintiff admitted that Mr. Herrmann told him at the meeting to discuss his termination that he and Plaintiff "do not click" and that Plaintiff does "not have a passion for the talent management business." (546a, Plaintiff Dep. at 183:7-17). In addition, Mr. Herrmann's disappointment in Plaintiff's performance in talent management is clearly stated by Mr. Herrmann in Plaintiff's recording of the termination meeting on April 12, 2010. (See supra at p. 55).

### 7. The Opinion of Plaintiff and His Subordinates Fails to Contradict RMI's Assessment That Plaintiff Did Not Embrace Talent Management.

Plaintiff points to certifications and testimony from his subordinates in an attempt to challenge upper management's conclusion that he did not "embrace talent management." (Appellant Brief, pp. 62-63). In support of this argument, Plaintiff refers to statements from three of his subordinates. Such an argument is unpersuasive. These individuals did not supervise Plaintiff and did not have knowledge of upper management's expectations for developing and increasing talent management, Plaintiff's performance on the monthly telephone calls with RMI's upper management, Plaintiff's repeated inability to accurately forecast talent management billings, and Plaintiff inability to obtain the necessary results in talent management. In fact, one of these individuals acknowledged that under

Plaintiff, the Northeast Region was behind other regions in talent management.

(212a, Kinnealy Dep. at 42:24-43:5).  Accordingly, these statements from

subordinates cannot support an inference of pretext because they are unable to

evaluate Plaintiff's performance as a General Manager.  See Billet, 940 F.2d at

825-27 (observing that the plaintiff's "view of his performance is not at issue; what

matters is the perception of the decision maker").

> As properly noted by the District Court:

> > DeMaio cites testimony of other non-supervisory employees to
> > show that they believed he fully embraced talent management
> > and, therefore, Right Management's strategic vision.  That
> > DeMaio and other non-supervisory employees disagreed with
> > Right Management's evaluation of DeMaio's performance does
> > not demonstrate pretext, as the issue is whether Right
> > Management believed DeMaio's performance to be deficient.

(18a).  Plaintiff argues that the District Court "missed the point entirely," but

provides no support.  As stated above, the view of Plaintiff's performance by

Plaintiff or his subordinates is insufficient evidence to establish pretext.  See Fowle

v. C & C Cola, 868 F.2d 59 (3d Cir. 1989) (indicating that plaintiff's challenge to

employer's conclusion that plaintiff lacked requisite leadership skills for position

was immaterial to whether employer's stated justification for adverse employment

decision was pretextual); see also Chou v. Rutgers, 283 N.J. Super. 524, 545–46

(App. Div. 1995) (finding superior's evaluation of plaintiff, even if not completely

fair or impartial, does not support conclusion that employer's decision to deny

promotion application was based on national origin, ancestry, or race).

## <u>CONCLUSION</u>

Based upon the record and the arguments set forth herein, RMI respectfully

submits that the District Court's finding that there are no disputed material issues

of fact to challenge the legitimate business decision of RMI as a pretext for age

discrimination is amply supported by the record and that the Order granting RMI's

Motion for Summary Judgment should be affirmed.

**FOX ROTHSCHILD LLP**
Attorneys for Defendant-Appellee
Right Management Inc.

By:  /s/ Heather R. Boshak
     Heather R. Boshak

Dated:        April 22, 2013

## <u>CERTIFICATE OF BAR MEMBERSHIP</u>

The undersigned hereby certifies pursuant to LAR 28.3(d) and 46.1(e), that

the attorney whose name appears on the foregoing Appellee Brief, Heather R.

Boshak, is a member of the bar of this Court.

**FOX ROTHSCHILD LLP**
Attorneys for Defendant-Appellee
Right Management Inc.


By: /s/ Heather R. Boshak
       Heather R. Boshak

Dated:      April 22, 2013

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the word limit requirements of F.R.A.P. 32(a) because:

a.      The brief is 13,380 words and is prepared in Times New Roman, 14 point font.

This brief complies with the electronic filing requirements of LAR 31.1(c) because:

a.      The text of this electronic brief is identical to the paper copies filed with the Clerk's Office and served upon the Plaintiff; and

b.      Norton Anti-Virus, has been run on the file containing the electronic version of this brief and no viruses have been detected.

**FOX ROTHSCHILD LLP**
Attorneys for Defendant-Appellee
Right Management Inc.

By:  /s/ Heather R. Boshak
        Heather R. Boshak

Dated:      April 22, 2013